## Handy's Estate.

*John C. Bell, Jr.*, for the trustees under the will of Margaret Handy Burton; *H. Gordon McCouch*, for the trustees of the University of Pennsylvania, to whom said Margaret Handy Burton had bequeathed the principal of the fund under her power of appointment, in case her daughter died without issue during the life of the trust; *James F. Hagen*, for the trustees under the will of Charles Handy, exceptants.

*William H. Trinkle*, for Margaret H. Waterall, contra.

LAMORELLE, P. J., on exceptions to first adjudication quoted above, March 11, 1929.—We are all of opinion that the Auditing Judge was undoubtedly correct in his construction of the will of Henry Handy, deceased, so far as it relates to the distribution of the original share of his daughter, Margaret H. Burton, and for the reasons given by him in the adjudication of this account, and also in the adjudication of another account in the same estate audited at the same time. A majority of the court, however, are of opinion that the Auditing Judge erred in not ruling that the fund of $16,000 (as to which the daughter Margaret had but a life estate) became part of the residuary estate, and should therefore, have been awarded, one-third to the trustee under the will of Charles Handy; one-third as a part of Margaret's trust estate to her daughter, Margaret B. Waterall, according to the adjudication upon her trust above set forth; and one-third as a part of Julia's trust estate, according to the distribution to be made thereof in the adjudication of another account in the same estate audited at the same time.

The exceptions filed on behalf of the trustee under the will of Charles Handy, deceased, are sustained; those filed by the trustees under the will of Margaret H. Burton, deceased, and by the trustees of the University of Pennsylvania are dismissed, except so far as the former refer to the fund of $16,000, which exceptions are sustained, and the adjudication, thus modified, is confirmed absolutely.

Counsel will prepare a schedule of distribution, in duplicate, in accordance with this opinion, and present same to the Auditing Judge for his approval and annexation to the adjudication.

VAN DUSEN, J., dissents as to the disposition of the $16,000 fund only.

LAMORELLE, P. J., on exceptions to second adjudication quoted above, March 11, 1929.—The court being evenly divided in opinion, the exceptions are to be dismissed.

Those of us who agree with the Auditing Judge are content to rest on his rulings, for the reasons given by him in his analysis of the clauses of the will, marked for convenience *(A)*, *(B)* and *(C)*.

As the dissenting opinion sets forth all facts, we deem it unnecessary to do more than briefly comment.

In seeking testator's purpose, we need but insert the words "during the continuance of the trust" in clause *(A)*—and from the context this phrase is necessarily understood—to make clauses *(A)* and *(B)* harmonize. *(A)* would then read, "and if, *during the continuance of the trust*, either of them should die without issue, her share of income to be paid to my son, Charles Handy, and to my said daughter or stepdaughter—whichever may survive—in equal parts, and to the survivor of them; and the principal of the said two-thirds of said residue as said survivor may by any last will and testament direct, and in default of any such direction, then to the heirs-at-law of said survivor, share and share alike."

One daughter, Julia, died during the continuance of the trust without issue, and thereupon her surviving half-sister, Margaret, along with the latter's brother, Charles, succeeded to that share of income, and when Charles died in 1923, all income became Margaret's. Thus, Margaret had absolute control of the disposition of the *corpus*, in event that she died without issue; but in fact she died leaving issue her surviving, one daughter, and thus clause *(B)* became effective. It reads: "If either my daughter Margaret J. Handy or my stepdaughter Julia J. Handy should die leaving issue, then in trust to hold the share of the parent during the minority of such issue and to pay the income for the support and benefit thereof, and to pay to such issue on reaching the age of twenty-one years the share of the parent in the principal sum and in all accruing interest of said residue. . . ."

At the time of Margaret's death, what was her share? The answer is obvious; all of the trust fund as to which she was then receiving the income, to wit, her original shares, plus that of her stepsister.

That there could be no doubt as to testator's intention, he defined in terms the share of the survivor of his two daughters which the issue of the survivor would take, as "the share of the parent in the principal sum and in all accruing interest of said residue. . . ." The "accruing interest" of the residue could, to our mind, mean nothing other than what had actually accrued because of Julia's prior decease.

In short, Margaret's power of appointment was dependent on neither her nor Julia having issue. If *either* had issue, the power to appoint became inoperative, and what passed to the issue was what would have gone under the power—the shares of the two half-sisters in the residuary estate.

All exceptions are accordingly dismissed and the adjudication is confirmed absolutely.

GEST, J., dissenting.—The will which we are called upon to construe is very badly drawn, and its obscurity would seem to be due, in great measure, to the effort of its draftsman to condense its provisions.

Henry Handy died in 1893, and by his will devised his entire estate to his trustees in trust to pay the income to his wife Margaret during her life, and at her death (which occurred in 1904) he bequeathed $16,000 to his son Charles, and $16,000 to his trustees in trust for his daughter Margaret during her life, and then, without any specific remainders at her death, he continued, "and as to the residue, in trust to pay to my said son, Charles Handy, the full equal one-third part thereof, absolutely; and as to the remaining two-

thirds of said residue, in trust to hold the same in two equal shares for and during the lives of my daughter above named and of my stepdaughter, Julia J. Handy, and to pay to them the income thereof, share and share alike, as the same shall accrue, *(A)* and if either of them should die without issue, her share of income to be paid to my son, Charles Handy, and to my said daughter or stepdaughter—whichever may survive—in equal parts, and to the survivor of them; and the principal of the said two-thirds of said residue, as said survivor may by any last will and testament direct, and in default of any such direction, then to the heirs-at-law of said survivor, share and share alike. *(B)* If either my daughter, Margaret J. Handy, or my stepdaughter, Julia J. Handy, should die leaving issue, then in trust to hold the share of the parent during the minority of such issue, and to pay the income for the support and benefit thereof, and to pay to such issue on reaching the age of twenty-one years the share of the parent in the principal sum, and in all accruing interest, of said residue; *(C)* but if said issue should die during minority, then to pay the said income to my surviving son, daughter or step-daughter—whichever may survive—in equal parts, and to the survivor of them; and the principal, as said survivor may by any last will and testament direct, and in default of any such direction, then to the heirs-at-law of said survivor, share and share alike." The letters *(A)*, *(B)* and *(C)* are inserted by the Auditing Judge and by us for convenience of reference. Upon the widow's death, the trustees filed their account, and, by the adjudication upon it, the Auditing Judge awarded $16,000 to Charles Handy; $16,000 to the trustees for Margaret, and the residue was awarded, one-third to Charles, one-third to the trustees for Margaret, the daughter, and one-third to the trustees for Julia, by marriage Julia H. Lincoln, the stepdaughter of the testator. Julia having died in 1917 without issue, her trustees filed an account, and by the adjudication thereon the balance was awarded to the trustees for Charles and Margaret, in accordance with sentence *(A)*. Charles died in 1923, whereupon the entire income of Julia's share became payable to Margaret, who had become Mrs. Burton. She died on April 30, 1928, leaving issue a daughter, Margaret Burton Waterall, and a will, in which she said, *inter alia:* "I hereby specifically exercise any power of appointment that may have been given to me under the last will and testament, dated Feb. 20, 1891, of my father, Henry Handy, and I do give, devise and bequeath any fund over which I may have such power of appointment unto Fidelity-Philadelphia Trust Company of Philadelphia and Charles Y. Fox, Jr., or the survivor of them, in trust to invest and re-invest the same and pay the net income therefrom unto my daughter, Margaret Burton Waterall, for a period of twenty-one years after my decease, and upon the expiration of the period of twenty-one years after my decease to assign, transfer and pay over the principal of the said fund to my daughter, Margaret Burton Waterall, absolutely and in fee," and on the further trust, in the event of her daughter Margaret dying before the expiration of the period of twenty-one years without leaving any children or issue of deceased children, to assign, transfer and pay over the principal of the fund to the trustees of the University of Pennsylvania for the purposes mentioned. The will of Margaret Handy Burton further contained numerous pecuniary bequests, and she bequeathed her residuary estate to the trustees of the University of Pennsylvania.

The trustees have filed the two accounts now before the court by reason of the death of Margaret Handy Burton, by which the trust has terminated. The first account is filed of the assets awarded to the trustees in 1904, including $16,000 bequeathed in trust for Margaret Burton for life, and also one-

third of the residuary estate bequeathed in trust for her under the residuary clause of the will. The Auditing Judge, in his adjudication on this account, awarded the entire balance for distribution to Margaret Burton Waterall. Exceptions were filed to this adjudication by the trustees under the will of Margaret H. Burton, deceased, and by the University of Pennsylvania as interested under her will, claiming that the entire balance should have been awarded to the said trustees. Exceptions were also filed by the trustee under the will of Charles Handy, claiming, with respect to the special trust fund of $16,000, that one-third of it should have been awarded to the estate of Charles Handy, deceased. The second account was filed of the assets awarded to the trustees for Charles and Margaret in 1918, after the death of Julia, being the one-third of the residuary estate bequeathed in trust for Julia under the residuary clause. The Auditing Judge, in his adjudication on this account, likewise awarded the entire balance for distribution to Margaret Burton Waterall. Exceptions were filed to this adjudication by the trustees under the will of Margaret H. Burton, deceased, and by the University of Pennsylvania as interested under the will, claiming that the balance should have been awarded to the said trustee.

1. The trust of one-third of the residuary estate for Margaret Handy Burton.

The Auditing Judge, in his adjudication upon this account, said: "Sentence *(B)* expressly gives Margaret's third to her daughter, and the only doubt arises from the imperfections of sentence *(A)*. That sentence has three possible meanings, of which one might be applicable here, to wit: That if one daughter should die without issue, there would be a power to appoint her share, and also the share of another daughter, though the latter had issue. This would be absurd, and so contradictory to sentences *(B)* and *(C)* that one of the other possible constructions must be adopted. I discuss these in an adjudication of Julia's share filed herewith, and need not do so here." And, accordingly, the Auditing Judge awarded the entire balance for distribution in this account to Margaret Burton Waterall.

We do not see how the Auditing Judge could have arrived at any other conclusion, in view of the clear language of the will in sentence *(B)*, and we, therefore, unanimously dismiss the exceptions filed by the trustees under the will of Margaret H. Burton and by the trustees of the University of Pennsylvania, and Lamorelle, P. J., in an opinion filed herewith, has expressed the views of the court.

2. The trust of $16,000 for Margaret Handy.

The account to which we have just referred included not merely the one-third of the residuary estate awarded in 1904 to the trustees for Margaret, but also the $16,000 awarded in trust for Margaret Handy for her life, without express limitation over on her death. This was a separate fund and was separately awarded by Judge Ferguson in 1904. It should have been separately accounted for, and some confusion would have been avoided had this been done. As to the present disposition of this special trust fund, the Auditing Judge said: "It is claimed that there is an intestacy as to the principal of Margaret's $16,000, of which there is no express disposition. Charles got $16,000 outright; Margaret got a life interest in $16,000; Julia got no such sum. It is very common and natural to speak of the share on which a parent is to receive income as 'the parent's share;' and it would seem to me that the testator, in making this difference between his stepchild and his own children, thought of the $16,000 as part of their respective shares. It will, therefore,

go in the same way as Margaret's third share of the residue, namely, to her daughter, Margaret Burton Waterall."

Exceptions were filed to this award by the trustees under the will of Charles Handy, on the ground that the $16,000, on the death of Margaret H. Burton, fell into the residue of the estate, and by the will of the testator should be divided into three equal shares, to one of which Charles Handy was entitled, the other two-thirds being in trust for Margaret and Julia, respectively. We are obliged to disagree with the construction placed on the will by the Auditing Judge regarding this fund of $16,000. This was left in trust for Margaret for life, but there was no express limitation over on her death, so that it must necessarily fall into the residue of the estate, not being specifically disposed of, and we can discover nothing in the will to indicate that the testator intended this to be an addition to Margaret's interest in the residue, or a part of it. In the opinion of the majority of the court, as expressed in the opinion of Lamorelle, P. J., this fund of $16,000 should, therefore, have been awarded, one-third to the trustee under the will of Charles Handy; one-third as a part of Margaret's trust estate to her daughter, Margaret B. Waterall, according to the adjudication upon her trust above set forth, and one-third as a part of Julia's trust estate. The exceptions of the trustee under the will of Charles Handy are sustained, Van Dusen, J., dissenting.

3. The trust of one-third of the residuary estate for Julia Handy.

The assets included in this account were originally awarded to the trustees for Julia, and on her death with sundry accretions to the trustees for Charles Handy and Margaret H. Burton.

Julia having died without issue and Charles having subsequently died, the income of this one-third share became payable to Margaret. On her death, the question arises regarding the distribution of the principal, and the Auditing Judge said in his adjudication: "The difficulty in sentence (A) arises from the failure of the draftsman to see that the devolution of principal and of income depends on different events. Income of a share may go according as the life-tenant does or does not have issue. Principal may go according to an additional event; that is, whether or not the surviving daughter also does or does not leave issue. We, therefore, have to supply some words by inference from the words used here and from other sentences. Sentence (A) has three possible meanings as to principal: 1. That if one daughter dies without issue, there is a power to dispose of both shares, though the other daughter has issue. This is absurd, and conflicts with sentences (B) and (C), and I have rejected it in disposing of Margaret's share in an adjudication filed herewith. 2. That it gives power to appoint the share of any daughter who dies without issue. 3. That it gives power to appoint the shares of both daughters, if both die without issue, but no power at all if either should leave issue. I think the latter is the correct construction. The testator speaks only of appointing two-thirds, and not any less share, which indicates that the appointment is to be made only of both together. In sentence (B) we find (though imperfectly expressed) the provision for the second situation, which is the one now before us. This sentence gives to the issue of a daughter 'the share of the parent in the principal sum *and in all accruing interest of* said residue.' The words italicized can hardly be intended to give 'accrued income' to the remainderman. That is not natural, and it occurs nowhere else in the will. In other places testator used the word 'income' when he means 'income.' It seems to me that the testator viewed the residue as a whole, and thought of the share of a life-tenant who died without issue as

falling into it, and that the phrase under discussion means 'the original share of the parent in the residue and all shares or interests, the income of which accrues to or falls into the residue by reason of the death of a daughter without issue.' This feature distinguishes the case from Dutilh's Estate, 286 Pa. 389, in which there is no reference to accrued shares. I will award the principal of this fund to Margaret Burton Waterall."

Whatever was the testator's real intention, and it must be confessed it is very difficult to extract it, it seems to us, after careful study, that its obscurity arises, as we stated, from the attempt of the testator or his draftsman to condense its provisions. The Auditing Judge says that "the testator viewed the residue as a whole and thought of the share of a life-tenant who died without issue as falling into it." It seems to us, on the other hand, that the testator intended to constitute two separate trusts of these two-thirds of the residuary estate. He expressly says, as to these two-thirds, "in trust to hold the same in *two* equal shares for and during the lives of my daughter (Margaret) and of my stepdaughter Julia, and to pay them the income thereof, share and share alike, as the same shall accrue." What he really meant was to bequeath one-third in trust for Margaret for life, and one-third in trust for Julia for life, with remainders on the death of each, but as these limitations on the deaths of each would be similar, the testator, or his draftsman, combined them in the awkward sentences we have quoted above. When, therefore, he came to consider the distribution of the several trusts on the deaths of his daughter and stepdaughter, the contingency of their leaving or not leaving issue became all-important, and in sentences *(A)* and *(B)* he endeavored to provide for these contingencies, though in the reverse order. In *(B)* he directed that if "either" of Margaret or Julia should die leaving issue, then "the share of the parent" should be held in trust during the minority of such issue for their support and maintenance, the "share of the parent" in the principal sum to be paid to them on majority, and in *(C)* he provided for the contingency of the death of said issue during their minority, in which case the income should be paid to the testator's son, daughter or stepdaughter and to the survivor of them, the principal to be paid as the survivor might direct by will, etc. But, according to *(A)*, if "either" of Margaret and Julia should die without issue, he directed her "share of the income" to be paid to Charles and to Margaret or Julia, whichever may survive, in equal parts, and to the survivor of them (which, of course, means the income for life), "and the principal of the said two-thirds of said residue as said survivor may by any last will and testament direct, and in default of any such direction, then to the heirs-at-law of said survivor, share and share alike."

The difficulty comes at this point, and, as the Auditing Judge observes, it "arises from the failure of the draftsman to see that the devolution or principal and income depends on different events," and, consequently, as the Auditing Judge observes, we have to supply some words by inference. If the language of sentence *(A)* be literally interpreted, the survivor of Margaret and Julia would have a right to appoint both shares if either of them died without issue. It is easy to see the absurd consequences of such a literal interpretation. For example, if Margaret had died first leaving issue, Julia would have had the right to appoint both her share and Margaret's to the exclusion of Mrs. Waterall, Margaret's daughter; a result which could never have been contemplated. Legally speaking, it would be merely accidental which of the daughters should die first, and which of them, if either, should have issue. To quote the language of Chief Justice Mitchell in Fox's Estate, 222 Pa. 108,

this "would be giving (to) an accidental and irrelevant fact an effect contrary to the manifest general intent." It is clear that the testator intended, and did in fact direct, that these two-thirds of his residuary estate should be held in two equal shares for the lives of Margaret and Julia, and it is equally clear in sentence *(A)* that the provision for the death of "either" without issue was intended to apply severally to both of them. The trouble arises when the testator gives to the survivor of Margaret and Julia the right to appoint the "said two-thirds of the residue," that is, both shares, when what he really intended was to give the power of appointment over the share of the daughter who died without issue. Having, however, in his mind the possibility that both daughters might die without issue, and doubtless intending, in such event, that the power of appointment should extend to both shares, he referred to the "said two-thirds of the residue," condensing into one paragraph what should have been expanded into two or three. If we read the words "two-thirds" as respecting the death of only one daughter without issue, that is, severally or distributively as correlative to "either" and not collectively as relating to both, the difficulty disappears.

The Auditing Judge construed sentence *(A)* to mean that it gave "power to appoint the shares of both daughters if both die without issue, but no power at all if either should leave issue," which would require the interpolation of the words "if both die without issue." The Auditing Judge further lays stress upon the gift in sentence *(B)* to the issue of a daughter of all "accruing interest in said residue," but this throws no light upon the interpretation of sentence *(A)*. It refers merely to the accruing interest of the daughter's share of the residue, which, under sentence *(B)*, is given to her issue; it has no reference to any accrued or "accruing" share of either daughter. Nor does the word "interest," as used in this sentence, refer to an interest in the residue as equivalent to a share thereof. This would not be consistent with the testator's use of the word "share" in other parts of the will.

These inconsistencies and other difficulties that might be pointed out are removed if we read the words "two-thirds" as meaning, in the event, which happened, of Julia's death without issue and the subsequent death of Margaret leaving issue, as vesting in Margaret, as the survivor, the right to appoint Julia's share only.

Precedents are not wanting where words have been similarly changed. It may be conceded that such an alteration may only be made in unusual cases, and, as Jarman points out, 6th ed., 599, it must be apparent, not only that the testator has used the wrong word, but also what is the right one; but, if this be clear, the alteration of language is warranted by the established principles of construction. Numerous cases may be found in Jarman, above cited, in 40 Cyc., 1399, *et seq.*, and in Lyle's Estate, 4 D. & C. 67. Some of the decisions go even further than it is necessary to go in the present case, but to quote them in detail would add too greatly to the length of this opinion. The principle is clear and, on applying it here, we arrive, to use the language of Judge Gummey in McConnell's Estate, 28 Dist. R. 647, adopted by the Supreme Court in 266 Pa. 294, "at an harmonious construction which does no violence to the remaining paragraphs of the will."

The court, however, is equally divided upon these exceptions, which must be dismissed in accordance with the opinion filed by Lamorelle, P. J., with whom concur Van Dusen, J., and Stearne, J. Gest, J., Henderson, J., and Thompson, J., dissent, being of the opinion that the balance for distribution in the trust for Julia should have been awarded, under the power of appoint-

14

ment vested in Margaret H. Burton and exercised by her, to Fidelity-Philadelphia Trust Company and Charles Y. Fox, trustees under the will of Margaret H. Burton, and that their exceptions and the exceptions of the University of Pennsylvania should be sustained.